COURT OF APPEALS
DECISION
DATED AND FILED

July 31, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.   **2016AP2082**
 **2017AP634**

Cir. Ct. No. **2015CV2403**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

KATHLEEN PAPA AND PROFESSIONAL HOMECARE PROVIDERS, INC.,

 PLAINTIFFS-RESPONDENTS,

 V.

WISCONSIN DEPARTMENT OF HEALTH SERVICES,

 DEFENDANT-APPELLANT.

APPEALS from orders of the circuit court for Waukesha County: KATHRYN W. FOSTER, Judge. *Order reversed and cause remanded with directions; orders vacated.*

Before Reilly, P.J., Gundrum and Hagedorn, JJ.

¶1      HAGEDORN, J.   This action is an attempt by medical providers to curb what is alleged to be an unlawful Medicaid recoupment policy by the

Wisconsin Department of Health Services (DHS). Ordinarily, these challenges would come through administrative proceedings arising from fact-specific recoupment efforts. But here, Kathleen Papa and Professional Homecare Providers, Inc. (PHP)[1] sought declaratory and injunctive relief against DHS recoupment practices more generally by challenging Topic #66—a provision in the DHS-published *Medicaid Provider Handbook*. PHP asserts that Topic #66 is an unpromulgated administrative rule, and an unlawful one at that. More specifically, PHP argues that Topic #66 imposes documentation requirements on Medicaid providers that go beyond those authorized and allowed by law. PHP points to 2011 Wisconsin Act 21, which only allows administrative agencies to implement or enforce requirements when a statute or administrative rule explicitly requires or permits that requirement. The circuit court agreed and issued a broad injunction against enforcement of Topic #66; it also set new parameters to govern all DHS recoupment efforts.

¶2 The parties agree (as do we) that DHS may only recoup payments when it has explicit authority to do so, either through statute or administrative rule. But PHP's broader attack on DHS recoupment policies fails because this case is premised on the claim that Topic #66 is an administrative rule; we conclude it is not. And since PHP has not challenged an administrative rule, judgment must be entered in favor of DHS.

---

[1] Unless specifically referring to the respondents in their individual capacity, we will refer to them collectively as PHP.

**BACKGROUND**

¶3    This case centers on DHS's authority to recover improper Medicaid payments from certified medical providers.  "Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals."  ***Newcap, Inc. v. DHS***, 2018 WI App 40, ¶4, 383 Wis. 2d 515, 916 N.W.2d 173 (quoting ***Wilder v. Virginia Hosp. Ass'n***, 496 U.S. 498, 502 (1990)).  DHS administers the Medicaid program in Wisconsin.  WIS. STAT. § 49.45 (2017-18)[2]; WIS. ADMIN. CODE § DHS 101.01 (May 2019).[3]

¶4    In its administration of that program, DHS contracts with medical providers to reimburse them for medically necessary and appropriate health care services that have been delivered to Medicaid-eligible recipients.  WIS. STAT. § 49.45(3); *see also* WIS. ADMIN. CODE § DHS 107.01(1) (May 2019).[4]  As part of that agreement, the law requires providers to "maintain records as required by [DHS] for verification of provider claims for reimbursement."  Sec. 49.45(3)(f)1.  DHS is authorized to "audit such records to verify actual provision of services and the appropriateness and accuracy of claims."  ***Id.***; *see also* § 49.45(3)(g)1.  When DHS cannot verify this information, the provider's claim for reimbursement may be denied.  Sec. 49.45(3)(f)2.  In instances where payment has already been made for a claim that later cannot be verified in an audit, DHS can recover the value of

---

[2]  All references to the Wisconsin Statutes are to the 2017-18 version.

[3]  All references to WIS. ADMIN. CODE ch. DHS 101 are to the May 2019 version, which is the current version of that chapter.

[4]  All references to WIS. ADMIN. CODE ch. DHS 107 are to the May 2019 version, which is the current version of that chapter.

the improper payment.  *Id.*  Each of these steps is legislatively enacted to ensure the state is in compliance with federal Medicaid laws.[5]

¶5      PHP is a nonprofit organization of professional nursing-services providers, including Papa, who is a Medicaid-certified nurse.  As an organization, PHP offers training and educational services to independently practicing nurses "to promote quality nursing care and adherence to professional standards and state regulations."  PHP members have previously been the subject of DHS audits.

¶6      WISCONSIN STAT. § 227.40(1) allows parties to challenge "the validity of a rule or guidance document" via a declaratory judgment action in a circuit court.  In December 2015, PHP followed this procedure and filed an action alleging that Topic #66 in the DHS-published *Medicaid Provider Handbook*[6] was an unpromulgated and illegal administrative rule.  Topic #66 reads:

> **Program Requirements**
>
> For a covered service to meet program requirements, the service must be provided by a qualified Medicaid-enrolled provider to an enrolled member.  In addition, the service must meet all applicable program requirements, including, but not limited to, medical necessity, PA (prior authorization), claims submission, prescription, and documentation requirements.

---

[5] The federal Medicaid program requires participating states to have a program to audit participating providers' records to ensure that proper payments are made under the states' Medicaid plans.  42 U.S.C. § 1396a(a)(42)(A) (2018).  Wisconsin's Medicaid program is subject to federal audits, which ensure the state is recovering improper payments and refunding the federal share to the Centers for Medicare and Medicaid Services (CMS).  Sec. 1396a(a)(42)(B)(ii); 42 C.F.R. §§ 433.300-.322 (2018).  If a federal audit reveals that Wisconsin's program does not meet federal requirements or is not adequately fulfilling the state's federal recovery obligations, CMS can withhold funds.  42 C.F.R. § 430.35(b)-(c).

[6] DHS develops and publishes the handbook to lend guidance to Medicaid providers. WIS. ADMIN. CODE § DHS 101.03(141).

PHP alleged that, on the basis of Topic #66, DHS was recouping payments whenever an audit revealed that covered and reimbursed services failed to meet "*all* applicable program requirements." It asserted that DHS's use of this policy was problematic because Topic #66 was not promulgated as an administrative rule, the policy itself exceeded DHS's statutory recoupment authority, and DHS's use of Topic #66 to recoup payments constituted an unconstitutional taking without just compensation.

¶7     Both parties eventually moved for summary judgment. The circuit court concluded this case presented a justiciable controversy, and it broadly agreed with PHP, entering sweeping declaratory and injunctive relief. The circuit court described Topic #66 as a part of DHS's broader recoupment policy, which the court called a "Perfection Rule." The circuit court then declared that this policy, including Topic #66, constituted an unpromulgated administrative rule and enjoined enforcement. Even more broadly, the court declared that DHS's recoupment authority was limited under WIS. STAT. §§ 49.45(3)(f) and 49.45(2)(a)10. to situations where (1) DHS is unable to verify from a provider's records that a service was actually provided, or (2) an amount claimed was inaccurate or inappropriate for the service that was provided.[7]

¶8     DHS appealed. Three days after this court took the appeal, PHP moved the circuit court for supplemental relief from DHS's violation of the injunction. The circuit court granted PHP's motion and entered an order "[t]o restate and give effect to the declaratory judgment and injunction previously

---

[7] The circuit court rejected the takings claim, and PHP has not reasserted this claim on appeal.

5

entered." In so doing, the court enjoined DHS from initiating or continuing any recoupment efforts if the provider's records verified that the services were provided and the provider was paid an appropriate amount for such services. The court entered a separate order requiring DHS to pay PHP's attorney's fees and costs related to its motion.

¶9      Thereafter, DHS filed an amended notice of appeal. This court accepted that appeal, and later granted DHS's request to consolidate the two appeals now before us.

## STANDARD OF REVIEW

¶10      A circuit court's decision to grant summary judgment is subject to this court's de novo review. *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶34, 309 Wis. 2d 365, 749 N.W.2d 211. Whether Topic #66 constitutes a "rule" under WIS. STAT. ch. 227 is also reviewed de novo. *Cholvin v. DHFS*, 2008 WI App 127, ¶11, 313 Wis. 2d 749, 758 N.W.2d 118.

## DISCUSSION

¶11      This case raises a number of potential issues. The parties debate and discuss whether 2011 Wisconsin Act 21 places limits on DHS's authority to impose documentation requirements on Medicaid providers,[8] what specific kinds

---

[8] Indeed, though contesting its application here, both parties seem to agree that it does; DHS may not impose requirements more restrictive than those "explicitly required or explicitly permitted" by statute or valid administrative rule. 2011 Wis. Act 21, § 1r (codified at WIS. STAT. § 227.10(2m)).

of requirements DHS may impose,[9] and whether the case is even justiciable in the first place.

¶12      We focus our attention, however, on Topic #66.  While PHP has styled and briefed this as a broader attack on DHS's recoupment policies generally, this case stems from a more narrow and specific root—an effort to brand Topic #66 as an invalid administrative rule under WIS. STAT. § 227.40(1).

¶13      Relief under WIS. STAT. § 227.40(1) is premised on the existence of a rule that "interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff."  Under such review, the court must declare a rule invalid if it violates constitutional provisions, exceeds the agency's statutory authority, or was not promulgated in compliance with statutory rule-making procedures.  Sec. 227.40(4)(a).  The party challenging a rule bears the burden of proving its invalidity.  *See Wisconsin Realtors Ass'n v. PSC*, 2015 WI 63, ¶¶66-67, 363 Wis. 2d 430, 867 N.W.2d 364 (citing WIS. STAT. § 227.20(3)).

¶14      In granting PHP relief, the circuit court accepted PHP's invitation to view this case as a broader attack on DHS's recoupment policies, construing Topic #66 as a part or reflective of a broader scheme.  In fact, the circuit court's order seems to declare invalid the "Perfection Rule," PHP's catchy phrase for

---

[9] Even if we reached a different conclusion on the general merits of PHP's case, we would still need to reverse because the circuit court's broad declaratory and injunctive relief is contrary to *Newcap, Inc. v. DHS*, 2018 WI App 40, 383 Wis. 2d 515, 916 N.W.2d 173, a separate, published decision addressing the scope of DHS's recoupment authority that was released after briefing in this case.  In short, the circuit court's expansive relief created new parameters that conflict with at least some statutes and rules governing DHS recoupment efforts, including some recoupment efforts approved in *Newcap* itself.  However, given our holding on the dispositive issue regarding whether Topic #66 is an administrative rule, we need not belabor this point.

DHS's recoupment policies writ large. But this court's authority under WIS. STAT. ch. 227 does not extend to broader oversight of DHS's various recoupment policies. This is a challenge to a specific statement alleged to constitute an unlawful rule—Topic #66. While PHP attempts to direct our attention to more than that, we see no authority or law to govern anything beyond Topic #66, the specific provision challenged in PHP's complaint. *See* WIS. STAT. § 227.40(3) (requiring identification of the rule and assertion of its alleged invalidity in the pleading).

¶15 To be a rule, Topic #66 must be: "a regulation, standard, statement of policy, or general order of general application [1] *that has the force of law* and [2] that is issued by an agency to implement, interpret, or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency." WIS. STAT. § 227.01(13) (emphasis added). In our view, PHP has failed to meet its burden to prove Topic #66 has the "force of law."

¶16 In determining whether a provision has the "force of law," the language of the purported rule will often provide the answer. "Materials developed by an agency as a reference aid for its staff that are 'couched … in terms of advice and guidelines rather than setting forth law-like pronouncements' are not a 'rule' within the meaning of WIS. STAT. § 227.01(13) because they are not intended to have the effect of law." ***County of Dane v. Winsand***, 2004 WI App 86, ¶11, 271 Wis. 2d 786, 679 N.W.2d 885 (citation omitted).[10] In contrast, "provisions using express mandatory language are more than informational. In

---

[10] WISCONSIN STAT. § 227.01(13) was subjected to some minor stylistic edits in 2018, at which time the statutory language changed from "*effect* of law" to "*force* of law." 2017 Wis. Act 369, § 32. We see no reason to draw different interpretations as to these phrases here.

those provisions the agency speaks with an official voice intended to have the effect of law." *Milwaukee Area Joint Plumbing Apprenticeship Comm. v. DILHR*, 172 Wis. 2d 299, 321 n.12, 493 N.W.2d 744 (Ct. App. 1992). In addition, we can also look to the use of the disputed provision to determine whether the agency has intended for it to have the force of law. *See Barry Labs., Inc. v. Wisconsin State Bd. of Pharmacy*, 26 Wis. 2d 505, 516, 132 N.W.2d 833 (1965) ("As far as the board was concerned, the interpretation embodied in the instruction had the effect of law. The board had the means to enforce it as law and did so until invalidity was found on judicial review."). Other instances where agency materials have been held to have the force of law include "where criminal or civil sanctions can result as a violation; where licensure can be denied; and where the interest of individuals in a class can be legally affected through enforcement of the agency action." *Cholvin*, 313 Wis. 2d 749, ¶26.

¶17    We conclude that Topic #66 does not have the force of law and therefore does not constitute an administrative rule. Rather, it synthesizes and summarizes the existing law, whose authority is found in other statutes or administrative rules.[11] Topic #66 reads like a summary, not a legal directive. The first sentence simply indicates "the service must be provided by a qualified Medicaid-enrolled provider to an enrolled member." The second sentence says

---

[11] To that point, DHS has identified a corresponding basis under both state and federal law for each component of Topic #66. For example, the controlling state law bases include as follows: For covered service to meet program requirements [WIS. ADMIN. CODE §§ DHS 106.02 (Jan. 2014), 107.02(2)], the services must be provided by a qualified Medicaid-enrolled provider [§ DHS 106.02(1)] to an enrolled member [§ DHS 106.02(3)]. In addition, the service must meet all applicable program requirements [§ DHS 106.02(4)], including, but not limited to, medical necessity [§§ DHS 106.02(5), 107.01(1)], prior authorization [§ DHS 107.02(3)], claims submission [§§ DHS 106.03, 107.02(2)(h)], prescription [§ DHS 107.02(2m)(a)], and document requirements [WIS. STAT. § 49.45(3)(f), § DHS 107.02(2)(e), (f)]. As to how this authority corresponds to its application in specific cases, we leave that for another day.

covered services "must meet all *applicable* program requirements, *including, but not limited to*, medical necessity, PA (prior authorization), claims submission, prescription, and documentation requirements." (Emphasis added.) This simply begs the question of what the "applicable" requirements actually are—the very type of thing you would see in a summary. By its terms, Topic #66 directs the reader to other sources of law and does not read like a directive having the force of law. Moreover, nowhere has PHP shown or demonstrated that Topic #66 itself—rather than the myriad statutes and rules underlying the summary—is being used by DHS to interpret or guide enforcement of any documentation requirements.[12] Therefore, at least on this record, PHP has not met its burden to prove Topic #66 has the force of law.[13]

¶18    Given our conclusion that Topic #66 is not an administrative rule, the rest of PHP's claims fail.[14]   Simply stated, there exists no rule to declare invalid, and summary judgment should have been granted in favor of DHS.

---

[12] The dissent claims that we are attempting to skirt the application of 2011 Wis. Act 21. That is simply not the case. We agree that Act 21 may apply even in the absence of a promulgated administrative rule. But its application is still dependent on a showing that the administrative agency is actually implementing or enforcing the disputed standard, requirement, or threshold. Such a showing was not made here.

[13] This is not to say that a provision within the *Medicaid Provider Handbook* could never amount to an administrative rule. *E.g.*, **Will v. DHSS**, 44 Wis. 2d 507, 517, 171 N.W.2d 378 (1969) (holding provision in agency manual that provided procedural steps and time limits for public assistance review hearings constituted a rule or statement of general policy). We do not see it being used or applied the same way here, however.

[14] While DHS made a credible argument that this controversy was not justiciable, we chose to address the merits of whether Topic #66 was an administrative rule, and thus need not address the justiciability arguments further.

**CONCLUSION**

¶19    In sum, we determine that PHP has not met its burden to prove Topic #66 is an administrative rule that required promulgation under WIS. STAT. ch. 227 or exceeded DHS's authority.  This conclusion leaves PHP without a basis for its requested relief pursuant to WIS. STAT. § 227.40(1).  Therefore, we reverse in full the circuit court's order on summary judgment and remand with directions for judgment to be entered in favor of DHS.  The circuit court's orders on supplemental relief are vacated.

        *By the Court.*—Order reversed and cause remanded with directions; orders vacated.

        Not recommended for publication in the official reports.

**Nos. 2016AP2082(D)**
**2017AP634(D)**

¶20 REILLY, P.J. (*dissenting*). The majority acknowledges that under 2011 Wis. Act 21[1] DHS may only recoup payments when it has explicit authority to do so. Majority, ¶¶1-2. The purpose of Act 21 is to prevents agencies, such as DHS, from doing exactly what DHS did to Kathleen Papa—utilizing its own standards or thresholds (DHS's discretion) rather than following explicit rules set forth under the administrative code or statute. The majority errs in this case by turning Act 21 on its head to hold that Topic #66 has to be an administrative rule in order for Act 21 to apply. Majority, ¶¶15, 17. I agree with the majority that Topic #66 is not an administrative rule, but such a conclusion leads one to also conclude that Act 21 therefore prohibits DHS from utilizing Topic #66 to take Papa's property. *See* WIS. STAT. § 227.10(2m).

¶21 PHP does not have any "burden to prove Topic #66 is an administrative rule that required promulgation under WIS. STAT. ch. 227."[2] Majority, ¶19. The simple fact is that the circuit court found that DHS was enforcing standards, thresholds, and requirements found in Topic #66 as a mechanism to take Papa's property without the legal right to do so. *See* WIS. STAT. § 227.10(2m). I agree with the circuit court and would affirm.

---

[1] Act 21 expressly prohibits agencies from "implement[ing] or enforc[ing] *any standard, requirement, or threshold* … unless that standard, requirement, or threshold is explicitly required or explicitly permitted by statute or by a rule." 2011 Wis. Act 21, § 1r (codified at WIS. STAT. § 227.10(2m)) (emphasis added).

[2] Nor is it required that a party bring a challenge only to a "rule" under WIS. STAT. § 227.40(1) as judicial review under the statute also applies to a "guidance document."

¶22     While the majority may be trying to rectify the overreaching breadth of Act 21, we may not do so.  Act 21 removes discretion from agencies and places it solely within the hands of the legislature.  While such a policy may be unwise, it is still the law.  The circuit court applied the law as written, and we must as well.  I respectfully dissent.